Jun Yu v. Garland

BIA
Factor, IJ
A206 894 906

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of April, two thousand twenty-four.

PRESENT:
>   MICHAEL H. PARK,
>   EUNICE C. LEE,
>   SARAH A. L. MERRIAM,
>       *Circuit Judges.*

_____

XU JUN YU,
>       *Petitioner,*

>   v.                                                                                   22-6147
>                                                                                         NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
>       *Respondent.*

_____

FOR PETITIONER:                    Gary J. Yerman, New York, NY.

**FOR RESPONDENT:**     Brian M. Boynton, Principal Deputy Assistant Attorney General; Liza S. Murcia, Jeffrey R. Leist, Senior Litigation Counsel; Lance L. Jolley, Trial Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Xu Jun Yu, a native and citizen of the People's Republic of China, seeks review of a March 18, 2022 decision of the BIA affirming a June 10, 2019 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Xu Jun Yu*, No. A 206 894 906 (B.I.A. Mar. 18, 2022), *aff'g* No. A 206 894 906 (Immigr. Ct. N.Y.C. June 10, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified and supplemented by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's factual findings for substantial evidence, and we review questions of law and the application of law to fact de novo. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d

2

Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The governing credibility standard provides as follows:

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . , the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Id*. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.

Here, substantial evidence supports the adverse credibility determination. The agency reasonably concluded that portions of Jun Yu's testimony were unresponsive and evasive and that long pauses in his testimony, particularly when he was asked about facts beyond the scope of his written statement, undermined

3

his credibility. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (deferring to agency's reliance on a demeanor assessment, based on a finding that the petitioner was "sometimes 'non-responsive' to questions," in reaching an adverse credibility determination). We give "particular deference" to such findings because the IJ is "in the best position to evaluate whether apparent problems in the . . . testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question." *Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 109 (2d Cir. 2006) (quoting *Jin Chen v. U.S. Dep't of Just.*, 426 F.3d 104, 113 (2d Cir. 2005)).

As the agency observed, Jun Yu did not respond directly and took a long pause when asked whether he had ever met his second child, who was born in Jun Yu's hometown while Jun Yu was allegedly in hiding elsewhere in China—a matter not addressed in his written statement. When asked why it had taken so long to respond, Jun Yu referred to the time elapsed since he had been in hiding, which is only tangentially related to whether he ever met his child, either while he was in hiding or after. The agency reasonably concluded that this testimony concerning an important life event suggested a lack of credibility. *See Likai Gao*, 968 F.3d at 149 (acknowledging that an applicant's difficulty responding to

4

questions that go beyond a written statement "can raise concerns that a witness's testimony is based more on a script than on actual experience"). Contrary to Jun Yu's assertion, the IJ specifically mentioned this testimony in explaining the adverse credibility determination. In further support of the IJ's demeanor finding, the BIA also accurately observed that Jun Yu failed to answer directly when asked whether the police were looking for him while he was in hiding, whether he worked while he was in hiding, whether he used his own passport to leave China, and whether his residence was misstated on his household registration.

In addition to arguing that his testimony was responsive, Jun Yu argues that the agency erred in finding that he failed to answer questions directly without adequately considering that the questioning was confusing or repetitive.[1] As we have frequently observed, IJs are generally in the best position to decide whether a witness understood the questions posed. *See Majidi v. Gonzales*, 430 F.3d 77, 81 n.1 (2d Cir. 2005). Upon our review of the record, we cannot agree that the

---

[1] Jun Yu also argues that the agency failed to consider his "explanations" for his non-responsive testimony, Petitioner's Br. at 14, but he does not identify what those explanations were, nor does he provide reasons for why his explanations would have "*compelled*" the agency to credit his testimony. *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005).

questions were confusing; and the repetition was appropriate because Jun Yu's initial answers were unrelated or ambiguous.

Moreover, when the IJ attempted to elicit additional details about Jun Yu's 15-day detention in China, Jun Yu offered little beyond what was in his written statement. Jun Yu argues that he should not be faulted for testifying consistently with his prior statements. But the IJ reasonably found that he should have been able to provide more details when invited to do so, given the length of the detention and the limited information in the written statement.

The agency also reasonably considered inconsistencies between Jun Yu's written statement and testimony. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). The IJ observed generally that there were inconsistencies between Jun Yu's testimony and the written record. In concluding that the IJ did not clearly err in that general finding, the BIA identified two date inconsistencies, one of which related to the date of a significant phone call. The record supports a finding of inconsistency in Yu's statements.

Specifically, Jun Yu asserted in his written statement that he received a telephone call alerting him to a friend's arrest and warning him to go into hiding on July 25, 2013; but he later testified that the call was two days later, that he

6

remembered this date specifically because he remembered that his friend was arrested on July 25, and that he may have been mistaken when preparing the statement. The agency was not required to accept that explanation. *See Majidi*, 430 F.3d at 80 ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)). Nor did the IJ need to expressly evaluate this explanation under the circumstances. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) ("[W]e have never required . . . that an IJ expressly parse or refute on the record each and every one of a petitioner's purported explanations for testimonial inconsistencies or evidentiary gaps."). And while minor date discrepancies like the one here "need not be fatal to credibility," *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir. 2000), the agency is entitled to rely on them "as long as the 'totality of the circumstances' establishes that [the] asylum applicant is not credible," *Xiu Xia Lin*, 534 F.3d at 167 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)).

Jun Yu argues that the BIA engaged in improper fact-finding in discussing this testimony. *See 8* C.F.R. § 1003.1(d)(3)(iv). That argument is without merit: the IJ found that there were inconsistencies between the written record and Jun

7

Yu's testimony, and the BIA provided this example to explain why this finding (and the broader finding that Jun Yu was not credible) was not clearly erroneous. *See id.* § 1003.1(d)(3)(i) ("Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.").

Jun Yu further argues that the BIA also engaged in impermissible fact-finding when it stated that his corroborating evidence—including evidence of church attendance and country reports—neither rehabilitated his credibility nor independently satisfied his burden of proof. *See* 8 C.F.R. § 1003.1(d)(3)(iv). But, here, where Jun Yu specifically argued in his appeal to the BIA that the IJ erred in assessing his corroborating evidence, the BIA's discussion of this evidence did not amount to improper fact-finding. *See Guerra-Galdamez v. Wilkinson*, 834 F. App'x 682, 684 (2d Cir. 2021) (summary order) (explaining that the BIA did not engage in impermissible fact-finding when it was "review[ing] the record" to be "responsive to [the petitioner's] arguments on appeal").[2]

---

[2] Jun Yu claims that the BIA further erred by upholding the IJ's credibility determination based on Jun Yu's difficulty with the question about his second-born son, because "the IJ did not mention this line of questioning in the Immigration Court's decision." Petitioner's Br. at 9. However, this argument is meritless because it is plainly contradicted by the record. Indeed, the IJ expressly

8

Finally, Jun Yu does not argue here that his corroborating evidence compels the conclusion that his testimony was credible. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (finding claim abandoned when it was not raised in petitioner's brief). Moreover, his cursory argument regarding his documentary evidence is insufficient to preserve an argument that the evidence independently satisfied his burden for any form of relief; and while he identifies background evidence of mistreatment of Christians practicing in unauthorized churches in China, that evidence would be relevant only if the agency had credited Jun Yu's testimony that he is a Christian who would practice in such a church. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

In sum, the IJ's demeanor and inconsistency findings provide substantial evidence for the adverse credibility determination. *See Likai Gao*, 968 F.3d at 145 n.8, 149; *Xiu Xia Lin*, 534 F.3d at 167. Because Jun Yu's claims for asylum, withholding of removal, and CAT relief all relied on the same discredited facts,

explained that, "when asked had [Jun Yu] . . . ever met his second son, [he] could not directly answer that question. The quality of the Respondent's testimony lends itself to an incredible determination." Certified Admin. R. at 49.

the adverse credibility determination foreclosed all three forms of relief.   *See Hong*

*Fei Gao*, 891 F.3d at 76.

For the foregoing reasons, the petition for review is DENIED.   All pending

motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

10